**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| WENDY KURTZ<br>4141 S Najavo St, Apt 403a<br>Englewood, CO 80110,<br><br>     Plaintiff<br><br>v.<br><br><br>UNITED OF OMAHA LIFE INSURANCE<br>COMPANY<br>3300 Mutual of Omaha Plaza<br>Omaha, NE 68175,<br><br>     Defendant | No. |

## **COMPLAINT**

Plaintiff Wendy Kurtz, through her undersigned counsel, for her Complaint against United of Omaha Life Insurance Company states as follows.

## **INTRODUCTION**

1. This is an action brought pursuant to Section 502(a) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq*. ("ERISA"). ERISA is a remedial statute that Congress enacted to protect "the interests of participants in employee benefit plans and their beneficiaries" by requiring the establishment of uniform standards of disclosure, conduct, and fiduciary responsibility. 29 U.S.C. § 1001(b). It imposes higher than marketplace standards on insurers and employee benefit plan fiduciaries—like Defendant—who must act in the sole interest of benefit plan participants and their beneficiaries for the exclusive purpose of providing benefits under the terms of an employee benefit plan. Defendant wrongfully denied Kurtz the employee benefits to which she was entitled under the terms of The PAI Corporation Health and Welfare

Plan ("the Plan") and denied her a full and fair review of her claim for Plan benefits when she appealed the adverse claim determination at issue in this case.

## THE PARTIES

2. Kurtz is presently a resident of Colorado, a former resident of Lancaster, Pennsylvania, and a former employee of Excentia Human Services, and a participant in the Plan.

3. Excentia Human Services is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania.

4. Excentia Human Services sponsors The Plan.

5. Excentia Human Services serves as the Plan's Administrator as that term is defined in Section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A).

6. The Plan is an employee welfare benefit plan that provides disability benefits to eligible Plan participants subject to the terms of the Plan.

7. United of Omaha Life Insurance Company is an insurance company organized under the laws of the State of Nebraska with its principal place of business located in Nebraska. It is licensed to conduct business in the Commonwealth of Pennsylvania.

8. United of Omaha Life Insurance Company issued a group policy of insurance bearing policy number GLTD-BCWZ ("the Group Policy") to Excentia Human Services to fund the Plan's long-term disability ("LTD") benefits and is responsible for adjudicating claims for LTD benefits arising under the Plan.

9. United of Omaha Life Insurance Company and Excentia Human Services are fiduciaries as that term is defined in Section 3(21) of ERISA, 29 U.S.C. § 1002(21), as they, *inter alia,* exercise authority or control respecting management or disposition of Plan assets.

## THE TERMS OF THE PLAN

10.    The Plan provides LTD benefits to eligible participants, including Kurtz, who satisfy the definition of Disability set forth in the Group Policy.

11.    The Group Policy defines "Disability" and "Disabled," in relevant part, as follows:

> Disability and Disabled mean that because of an Injury or Sickness, a significant change in your mental or physical functional capacity has occurred and:
>     a) during the Elimination Period, you are prevented from performing at least one of the Material Duties of your Regular Occupation on a part-time or Full-Time basis; and
>     b) after the Elimination Period, you are:
>         1. prevented from performing at least one of the Material Duties of your Regular Occupation on a part-time or Full-Time basis; and
>         2. unable to generate Current Earnings which exceed 99% of your Basic Monthly Earnings due to that same Injury or Sickness.

12.    The Group Policy further provides that "[a]fter a Monthly Benefit has been paid for 2 years, Disability and Disabled mean you are unable to perform "all of the Material Duties of any Gainful Occupation."

13.    The Group Policy defines "Material Duties" as "the essential tasks, functions, and operations relating to an occupation that cannot be reasonably omitted or modified."

14.    The Group Policy defines "Gainful Occupation" as "an occupation you are reasonably suited for by training, education or experience."

15.    The Group Policy defines "Regular Occupation" as follows:

> Regular Occupation means the occupation you are routinely performing when your Disability begins. Your regular occupation is not limited to your specific position held with the Policyholder, but will instead be considered to be a similar position or activity based on job descriptions included in the most current edition of the U.S. Department of Labor Dictionary of Occupational Titles (DOT) and the Occupational Informational Network (O*NET)…To determine your regular occupation, we will look at your occupation as it is normally performed in the national economy, instead of how work tasks are performed for a specific employer, at a specific location, or in a specific area or region.

16.     Under the Group Policy, the Elimination Period is the later of 90 calendar days or the date the participant's Policyholder-sponsored short-term disability benefits end.

17.     The Group Policy provides a Monthly Benefit for Total Disability equal to the lesser of 60% of the participant's Basic Monthly Earnings, less Other Income Sources, or the Maximum Monthly Benefit of $12,500, less any Other Income Sources.

18.     For a participant whose Disability begins at age 61 or younger, the Group Policy's Maximum Benefit Period extends to age 65, the participant's Social Security Normal Retirement Age, or 3 years and 6 months, whichever is longest.

## JURISDICTION AND VENUE

19.     The Court has general subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it arises under ERISA—a law of the United States—and specifically pursuant to 29 U.S.C. §§ 1132(e)(1) and 1132(f), which gives the District Court jurisdiction to hear civil actions brought pursuant to 29 U.S.C. § 1132.

20.     The Court has personal jurisdiction over Defendant as the Plan is administered in this District and Division, Defendant regularly transacts business in this District and Division, and Defendant has consented to the Court's personal jurisdiction. This Court also has personal jurisdiction over Defendant because it has significant contacts with this District, and because ERISA provides for nationwide service of process pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

21.     Venue is proper in this District pursuant to 29 U.S.C. §1132(e)(2) because at all relevant times: (a) the Plan was and is administered in this District; (b) the breaches and violations giving rise to the claims occurred in this District; and (c) Defendant may be found in this District.

Venue is also proper under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTS COMMON TO ALL COUNTS

22.    Excentia Human Services employed Kurtz as a Direct Support Professional Lead, an occupation that requires a medium level of physical exertion. As a full-time Excentia Human Services employee, Kurtz participated in the Plan.

23.    On September 9, 2022, Kurtz suffered a bimalleolar fracture of her right ankle and underwent open reduction internal fixation surgery that same day. She ceased working for Excentia Human Services because of that injury and has not returned to her Regular Occupation.

24.    Kurtz's recovery from the fracture and surgery was complicated by chronic pain in her right lower extremity, and she was diagnosed with complex regional pain syndrome ("CRPS").

25.    Kurtz's condition worsened over time. Her diagnoses came to include CRPS of both lower extremities, small fiber neuropathy, neuropathic symptoms in her hands, complicated migraine disorder, and gait and balance impairment requiring the use of a cane.

26.    Kurtz's claim for short-term disability benefits was approved, and she received short-term disability benefits from September 9, 2022 through March 23, 2023, when she reached the maximum benefit period for those benefits.

27.    Defendant subsequently approved Kurtz's claim for LTD benefits after determining that the medical records supported that she satisfied the Group Policy's Regular Occupation definition of Disability, and it paid her LTD benefits under the Plan.

28.    Defendant paid Kurtz a Monthly Benefit for two years. The operative definition of Disability under the Group Policy then changed from the Regular Occupation standard to the any Gainful Occupation standard.

29.     Defendant continued to pay Kurtz her monthly LTD benefit after the change in the definition of disability in March 2025.

30.     On May 29, 2025, Tony D. Smith, D.O., United of Omaha Life Insurance Company's Vice President and Medical Director, completed a paper review of the records in Kurtz's claim file. Dr. Smith, who is board certified in family medicine and holds no specialty certification in pain management, neurology, or physical medicine and rehabilitation, opined that the records did not support that Kurtz was precluded from full-time sedentary work. Dr. Smith asserted that "[t]here is no medical data supporting upper extremity deficits" even though the medical records documented, among other things, pain in all extremities, neuropathy in Kurtz's hands, and intermittent tremulousness of her arms and legs.

31.     On June 2, 2025, Kurtz's primary care provider advised United of Omaha Life Insurance Company that Kurtz could meet only some of the demands of sedentary work, that she could not perform those demands on a full-time basis, and required the use of an assistive device while ambulating. Dr. Smith reviewed the provider's response and, on June 4, 2025, reaffirmed his opinion.

32.     By letter dated July 8, 2025, United of Omaha Life Insurance Company denied Kurtz's claim for continued LTD benefits, with payment of benefits through July 23, 2025, asserting that the medical and vocational information in the claim file did not support that she satisfied the Gainful Occupation definition of Disability.

33.     Kurtz's condition had not materially improved when United of Omaha Life Insurance Company terminated her LTD benefits.  The restrictions and limitations documented during the period in which United of Omaha Life Insurance Company paid her LTD benefits remained in place. Moreover, Kurtz's condition had deteriorated and she experienced additional

medical conditions that restricted her ability to work in any occupation and which ultimately led to sustained inpatient medical treatment in the months following the termination of her LTD benefits.

34. On January 13, 2026, Kurtz submitted a timely appeal of United of Omaha Life Insurance Company's July 8, 2025 denial of her claim for disability benefits.

35. Kurtz's appeal explained, among other things, that her condition had not materially improved since United of Omaha Life Insurance Company found her to be disabled, that she could not perform full-time sedentary work, that Dr. Smith's review was unreliable and the product of a conflict of interest, and that the TSA was conclusory and relied on occupational descriptions that had never been produced to her.

36. During the appeal review, United of Omaha Life Insurance Company obtained a May 5, 2026 physical medicine and rehabilitation/pain medicine peer review from Solomon Rojhani, M.D., a May 5, 2026 psychiatry peer review and a May 11, 2026 addendum from Elbert Greer Richardson, M.D., and a May 13, 2026 Appeals Transferable Skills Assessment prepared by Samantha Host, MS, CRC.

37. Dr. Rojhani acknowledged Kurtz's CRPS, neuropathy, recurrent complicated migraines, balance impairment, gait disturbance, and use of an assistive device, and he concluded that the medical evidence supports the claimant's functional impairment. He nevertheless opined that Kurtz could sustain full-time work with restrictions, without explaining how Kurtz could reliably sustain a full-time schedule given her documented symptoms and without meaningfully addressing Ms. Geyer's opinion that Kurtz might be unable to work on a full-time basis.

38. Dr. Richardson limited his opinions to psychiatric restrictions and expressly deferred all non-psychiatric issues to other reviewers. His report repeatedly misidentified Kurtz as

a "42-year-old male." In his May 11, 2026 addendum, Dr. Richardson acknowledged that Kurtz was restricted to no more than activities of daily living from November 5, 2025 through January 13, 2026, while she received inpatient care and treatment.

39.    The May 13, 2026 TSA identified three sedentary occupations—Assistant Clerk, Program Coordinator Adult Day Care, and Rehabilitation Clerk—as purported Gainful Occupations for Kurtz. The TSA assumed that Kurtz could sustain work-related activity for up to eight hours per day and forty hours per week, and it again relied on eDOT occupational descriptions that United of Omaha Life Insurance Company has never produced to Kurtz despite her requests.

40.    On May 22, 2026, Kurtz submitted a written response to the new peer reviews and the new TSA, explaining why those materials did not support the denial of her claim.

41.    In a letter dated June 2, 2026, United of Omaha Life Insurance Company denied Kurtz's appeal and advised her of her right to bring a civil action under ERISA Section 502(a), 29 U.S.C. § 1132(a).

42.    All conditions precedent to filing suit have been completed.

### COUNT I – DENIAL OF BENEFITS
### PURSUANT TO 29 U.S.C. §§ 1132(a)(1)(B)

43.    Kurtz repeats, reaffirms, and realleges paragraphs 1 through 42 of the Complaint as if they were fully restated at length herein.

44.    Kurtz has exhausted her administrative remedies under the Plan and, thus, all conditions precedent to the filing of this action have been performed or have occurred.

45.    Kurtz is entitled to disability benefits under the terms of the Plan because she is disabled as defined by the Plan.

8

46.   The denial of Kurtz's claim for benefits was contrary to the terms of the Plan, *de novo* wrong, and an abuse of discretion.

47.   Defendant failed to provide Kurtz with a full and fair review of her claim in violation of Section 503 of ERISA, 29 U.S.C. § 1133, as well as 29 C.F.R. § 2560.503-1, by *inter alia*, failing to provide her with all documents relevant to her claim for benefits.

48.   Under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), a civil action may be brought by a participant or beneficiary to recover benefits due to her under the terms of her plan, to enforce her rights under the terms of the plan, or to clarify her rights to future benefits under the terms of the plan.

49.   As a result of Defendant's denial of Kurtz's claim for benefits, subsequently upholding that decision, and the refusal to overturn it, there exists an actual case and controversy by and between the parties hereto entitling Kurtz to a declaration of rights clarifying the benefits to which she is entitled under the Plan.

WHEREFORE, Kurtz prays the Court grant her the following relief with respect to Count I of her Complaint:

    a.   That the Court enter judgment in favor of Kurtz and against Defendant, and award her all past due disability benefits and future benefits pursuant to the terms of the Plan;

    b.   That the Court order Defendant to pay Kurtz prejudgment interest on all benefits that have accrued prior to the date of judgment;

    c.   That the Court award Kurtz her reasonable attorney's fees pursuant to 29 U.S.C. § 1132(g) and the costs of suit against Defendant; and

    d.   That Kurtz recovers any and all other relief to which she may be entitled.

Respectfully submitted,


/s/ Adam H. Garner
Adam Harrison Garner (320476)
The Garner Firm, Ltd.
1617 John F. Kennedy Blvd., Suite 1111
Philadelphia, PA 19103
Tel: (215) 645-5955
Fax: (215) 645-5960
adam@garnerltd.com

*Attorneys for Plaintiff*

Dated: June 16, 2026

10